UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KYLER D. W.,

               Plaintiff,

     v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. 3:25-cv-05545-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 5, Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her claim for SSI and DIB on May 15, 2023, alleging disability as of August 1, 2022. AR 17. Her application was denied initially and on reconsideration. *Id.* ALJ Mark Triplett held a hearing on December 4, 2024, and issued a decision later that month finding plaintiff not disabled. AR 17-31. The ALJ found that plaintiff's deformity of the left lower extremity (club foot), left ankle degenerative joint disease/osteopenia, and obesity were severe impairments. AR 20. Plaintiff had the residual functional capacity to

1

perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 3 hours in an 8-hour day; sit for 6 or more hours in an 8-hour day; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and occasionally tolerate exposure to extreme cold, vibration, and workplace hazards such as unprotected heights and exposed, moving machinery. AR 22.

The ALJ found plaintiff could perform work existing in the national economy and was accordingly not disabled. AR 29-30. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-3.

**DISCUSSION**

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

**1. Medical evidence.**

Under the applicable regulations, the ALJ was required to articulate how persuasive he found each medical opinion or prior administrative medical finding and explain how he considered supportability and consistency in his analysis. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability means the extent to which a medical source supports their opinion by explaining the relevant medical evidence. *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022). Consistency means the extent to which an opinion is consistent with the evidence from other medical and non-medical sources in the claim. *Id.* at 792. An ALJ cannot reject an opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Id*.

**a. Michael Lundborg, DPM**

Dr. Lundborg, plaintiff's treating podiatrist, opined that plaintiff could perform sedentary work involving lifting no more than ten pounds and walking or standing only for brief periods. AR 368. Dr. Lundborg also found that plaintiff's foot deformity caused a very significant interference with her ability to sit, stand, walk, fit, carry, push, pull, and crouch. AR 366. The ALJ found Dr. Lundborg's opinion unpersuasive on both supportability and consistency grounds.

**i. Supportability**

The ALJ found that Dr. Lundborg's clinical findings did not support marked functional limitations or any restrictions on lifting or carrying. AR 26 (citing AR 391, 397, 400, 403, 406). The ALJ reasoned that such limitations were not warranted because plaintiff had no signs of instability or loss of sensation. *Id.* The ALJ did not explain why

3

signs of instability or loss of sensation were required to support marked limitations, and there appears to be no basis in the record for this conclusion.

The ALJ's December 2024 decision concentrated on neutral or non-specific observations in medical records, but overlooked or failed to mention (AR 24, 26-27) a number of other findings. For example, the ALJ's decision mentions generally some of Dr. Lundborg's examination findings in April and May 2022, but does not discuss the assessment that plaintiff required surgery for removal of *a prominent and palpable screw* in the left heel; or that Dr. Lundborg discussed with plaintiff that a long term solution would be surgical reconstruction of the left foot. AR 424. The ALJ's decision does not discuss findings in September 2023, when Dr. Lundborg again examined plaintiff and suggested surgery -- in January 2024, he performed left foot surgery. AR 433, 999-1000. Nor does the ALJ's decision mention a post-operative appointment in June 2024, when plaintiff reported 6/10 pain, and Dr. Lundborg determined there was muscle weakness in the left ankle for which plaintiff was given an exercise schedule – but with the caveat that if pain persisted or got worse, plaintiff should discontinue the exercises and contact the doctor. AR 1010-1011. In August 2024, plaintiff reported pain of 5/10, and Dr. Lundborg reviewed updated x-rays, noted muscle weakness, gave an exercise recommendation with the same caveat about pain, and found osteoarthritis in both ankles. AR 1019. In later evaluation on August 18, 2024, the pain was reported to be 1/10 and strength was returning to the left foot. AR 1021-1024. Even with this improvement, Dr. Lundborg stated  that he discussed with plaintiff a possible need for more left foot surgery, "including fusion of the midfoot". AR 1024. In October 2024, Dr. Lundborg noted that plaintiff had pain when performing range of motion, and he told

plaintiff to utilize an ankle brace for a month and return for another evaluation. AR 1035. Thus, the ALJ's decision that Dr. Lundborg's opinion lacked support in the record of Dr. Lundborg's evaluations of plaintiff is unsupported by substantial evidence.

It is improper for an ALJ to act as his own medical expert, substituting his opinion for the opinion of a medical doctor. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (noting that as a lay person, an ALJ is "not at liberty to ignore medical evidence or substitute his own viewed for uncontroverted medical opinion" and is "not qualified to interpret raw medical data in functional terms.").

The ALJ also treated an application for a temporary disabled parking permit as a separate opinion and found it unpersuasive because it did not specify the functional rationale for the permit and was thus "unnecessarily vague." AR 26 (citing AR 312-13). He added that the temporary nature of this placard suggested Dr. Lundborg expected plaintiff's functioning to improve. *Id*. As plaintiff notes, this conclusion is speculative at best. Dkt. 12 at 7. Further, this conclusion is contradicted by Dr. Lundborg's actual opinion that plaintiff's limitations would persist for 12-24 months. AR 368. Accordingly, the ALJ's supportability findings are not supported by substantial evidence.

### ii. Consistency

The ALJ also found Dr. Lundborg's opinion inconsistent with plaintiff's improvement with treatment and activities of daily living. AR 26. Plaintiff argues the ALJ identified no evidence that contradicts Dr. Lundborg's opinion and that plaintiff's activities were not inconsistent with the opinion. Dkt. 12 at 7.

5

Evidence of improvement with treatment can justify rejection of a medical opinion. *Merritt v. Colvin*, 572 F. App'x 468, 470 (9th Cir. 2014); *see also Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). But some improvement in a claimant's condition does not mean that the claimant's impairments no longer seriously affect their ability to function in a workplace. *Holohan v. Massanari,* 246 F.3d 1195, 1205 (9th Cir. 2001). Plaintiff underwent surgery on her foot in January 2024 and subsequently received physical therapy. *See generally* AR 996-1038. Although the physical therapy records cited by the ALJ indicate improvement in plaintiff's strength and range of motion, plaintiff continued to have difficulty walking and pain with prolonged activity. *See, e.g.,* 1001-13. At an October 2024 follow-up with Dr. Lundborg, plaintiff expressed that physical therapy was still causing her pain, and Dr. Lundborg suggested further surgical intervention might be required. AR 1034. Thus, it is not apparent that plaintiff improved to such a degree that was inconsistent with Dr. Lundborg's opinion.

The ALJ also found Dr. Lundborg's opinion inconsistent with plaintiff's activities such as driving, lifting/carrying a 20-pound bag of litter, walking and standing for up to two hours each in a full day, and shopping in stores as needed. AR 26. These findings are not supported by substantial evidence.

First, Dr. Lundborg never expressed that plaintiff could not drive, and Dr. Lundborg completed an application for plaintiff to receive a disabled parking permit. AR 312-13. Next, the ALJ mischaracterizes some of plaintiff's activities. For example, plaintiff only testified to lifting, not carrying, a 20-pound bag of litter for her pet rabbits

and stated that she could not lift that much weight for up to one-third of a workday. AR 57. Nor did plaintiff testify to standing and walking for two hours each; she testified that she spent most of her day avoiding being on her feet. AR 54. This level of activity is consistent with Dr. Lundborg's opinion that plaintiff could only walk and stand for brief periods. The ALJ did not explain how often plaintiff shopped in stores or how long she spent shopping, so "shopping in stores as needed" is not necessarily inconsistent with Dr. Lundborg's opined limitations.

Accordingly, the ALJ's consistency findings are not supported by substantial evidence. Having failed to articulate valid supportability or consistency findings, the ALJ erroneously rejected Dr. Lundborg's opinion.

### b. Marquetta Washington

Ms. Washington completed a review of medical evidence for DSHS and opined that plaintiff had marked postural and gross or fine motor restrictions and was limited to sedentary work. AR 853-54. The ALJ found Ms. Washington's opinion unpersuasive because it was completed on a check-box form with no reference to clinical findings and she reviewed only a small portion of the medical evidence, which did not include clinical findings to justify restrictions on gross or fine motor movements. AR 27. The ALJ also stated the opinion was less persuasive because he could not determine whether Ms. Washington was an acceptable medical source. *Id.*

Plaintiff argues the ALJ failed to understand that Ms. Washington is a nurse practitioner[1] and asserts that the ALJ failed to state any valid reason for rejecting the

---

[1] Under the applicable regulations, an ALJ is required to consider the persuasiveness of each medical opinion and prior administrative medical finding using the factors described above, regardless of whether the source is an acceptable medical source. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

opinion. Dkt. 12 at 7. Plaintiff fails to engage in any meaningful manner with the ALJ's consistency and supportability analyses. *Putz v. Kijakazi*, 2022 WL 6943095, at *2 (9th Cir. Oct. 12, 2022) (holding where claimant gave "short shrift" to her arguments, failing to "actually argue" any of her points beyond "bare assertions of error," she waived the arguments); *Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 929 (9th Cir. 2003) ("a bare assertion of an issue does not preserve a claim.").

In any event, the ALJ properly rejected Ms. Washington's opinion. The opinion is a check-box form devoid of any explanation or citation to supporting evidence, *see* AR 853-55, and an ALJ may permissibly reject check-box reports that do not contain any explanation for the bases of their conclusions. *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Although the ALJ fails to adequately address the consistency factor here, his valid findings as to supportability constitute a sufficient independent basis to find Ms. Washington's opinion unpersuasive. *See Woods,* 32 F.4th at 792-94, n.4.

### c. William R. Wilkinson, Ed.D.

Dr. Wilkinson found plaintiff was markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; maintain appropriate behavior in a work setting; and complete a normal workday and work week without interruptions from psychologically based symptoms. AR 1161. The ALJ found Dr. Wilkinson's opinion unpersuasive because it was unsupported by his examination and inconsistent with other evidence in the record, such as reports of normal behavior and mood and plaintiff's daily activities. AR 27-28. Plaintiff argues the ALJ is improperly attempting to

act as a medical expert and that Dr. Wilkinson sufficiently explained the basis of his opinion. Dkt. 12 at 9.

The ALJ noted that Dr. Wilkinson's mental status examination (MSE) was within normal limits except for findings of anxious mood and congruent affect, and a comment that plaintiff was "personable, although somewhat apprehensive appearing." AR 28, 1662. While the MSE was otherwise normal, the ALJ fails to acknowledge the other portions of Dr. Wilkinson's opinion that tend to support his limitations.

For instance, Dr. Wilkinson noted in his clinical findings that plaintiff was "quite anxious to a marked/severe level," and that plaintiff has had to force herself through much anxiety at different jobs until she became overwhelmed and either did not return or was let go. AR 1160. The ALJ improperly cherry-picked the normal MSE findings to support his conclusion and ignored the rest of Dr. Wilkinson's opinion. *Holohan,* 246 F.3d at 1207 (finding the ALJ erred by selectively picking some entries in the record while ignoring others). The ALJ's supportability findings are therefore not supported by substantial evidence.

Plaintiff fails to address the ALJ's consistency analysis. *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1226 n.7 (9th Cir. 2009) (arguments not made in opening brief are deemed waived). The ALJ's unchallenged consistency findings are a sufficient independent basis for the ALJ to find Dr. Wilkinson's opinion unpersuasive, despite the ALJ's erroneous supportability findings. *Woods,* 32 F.4th 792-94, n.4. Accordingly, the Court affirms the ALJ's findings.

**d. Phillip Matar, MD**

Dr. Matar reviewed plaintiff's claim at the reconsideration level and opined limitations identical to those contained in the RFC. AR 94-96. Plaintiff argues the ALJ erred by finding Dr. Matar's opinion persuasive but failing to adopt his finding that plaintiff was limited to sedentary work. Dkt. 12 at 9. Although the functional limitations in the RFC are identical to those opined by Dr. Matar, the ALJ found plaintiff capable of light work, while Dr. Matar found plaintiff was capable of only sedentary work. *Compare* AR 22 *and* 96. It is error for an ALJ to give great weight to a physician's opinion but fail to include all of the physician's opined limitations in the RFC. *Betts v. Colvin,* 531 F. App'x 799, 800 (9th Cir. 2013).

Any such error here was harmless, for two reasons. First, Dr. Matar's classification of plaintiff's exertional capacity as sedentary appears to be inconsistent with the regulations. Dr. Matar opined plaintiff's maximum standing and walking capacity was three hours, AR 94, but the Social Security Administration has stated that "periods of standing or walking should generally total no more than about 2 hours in an 8-hour workday" in sedentary work. SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). Further, Dr. Matar opined plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, but the regulations state that sedentary work involves lifting no more than 10 pounds at a time. 20 C.F.R. §§ 404.1567(a), 416.967(a).

Second, the ALJ's hypothetical posed to the vocational expert (VE) included all limitations in the RFC, but did not define an exertional level. AR 60-61. The VE identified three occupations that were consistent with the ALJ's hypothetical, all of which were classified as light work. AR 61-62. The VE even accounted for the reduced standing and walking capacity by reducing his estimate of the number of jobs available.

*Id.* Because the VE considered plaintiff's exact RFC limitations, the Court finds there can be no reversible error in the ALJ categorizing the RFC as light instead of sedentary. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 885 (9th Cir. 2006) (error is harmless when it is clear from the record that the ALJ's error was "inconsequential to the ultimate nondisability determination").

### 2. Plaintiff's statements regarding symptoms and limitations

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citation omitted). In assessing a plaintiff's credibility, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear, and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). An ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639, 641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain).

The ALJ found plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but found her statements as to the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence. AR 23.

First, the ALJ found plaintiff's testimony inconsistent with her daily activities. AR 23-24. An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). But "a disability claimant need not vegetate in a dark room in order to be deemed eligible for benefits." *Reddick*, 157 F.3d at 722 (internal quotation marks omitted).

Here, the ALJ found activities such as cooking, gaming, reading, driving, shopping, and caring for her pet rabbits, were inconsistent with her reports of disabling symptoms. AR 23. But the ALJ failed to explain how these activities were inconsistent with plaintiff's testimony, and the Court can see no reasonable inference that such inconsistency exists.

The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Accordingly, the Court finds this was not a clear and convincing reason to reject plaintiff's testimony.

The ALJ also found that the objective findings failed to provide strong support for plaintiff's allegations of disabling symptoms and limitations. AR 24. He noted that despite abnormal findings, clinical exams note that plaintiff was alert, did not exhibit signs of acute distress, and had normal sensation and strength in all but the left calf. *Id.*

Notes from a medical examination stating the observation of "no acute distress" are of questionable relevance, in the context of a medical record showing chronic

12

conditions, to assess plaintiff's description of symptoms or limitations when the pain is ongoing rather than happening in acute spikes. *See, e.g., Troy A. H. v. Comm'r of Soc. Sec.,* 2022 WL 336846, at *5 (D. Or. Feb. 4, 2022) ("it is questionable whether a chart note of "no acute distress" is relevant to allegations of chronic symptoms."); *Richard F. v. Comm'r of Soc. Sec.,* 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019) ("'Acute' means 'of recent or sudden onset; contrasted with chronic.'") (internal citation omitted). The record shows plaintiff's impairments are chronic. The fact that she is not in acute distress is not inconsistent with her allegations of chronic pain. *Heather H. v. Comm'r of Soc. Sec.,* 2025 WL 2437735, at *6 (W.D. Wash. Aug. 25, 2025) ("While 'no acute distress' is not defined, it clearly does not indicate Plaintiff is not in pain.").

Whether or not plaintiff is described as "alert" also has little relevance here. Whether a patient is "alert" refers to their level of consciousness. *See Joseph S. v. Colvin,* 2024 WL 5056615, at *5 (E.D. Wash. Dec. 10, 2024) ("When a medical note states that a patient is "alert" [it] means that they are actively perceiving the world around them, are conscious, and are responding to stimuli."). That plaintiff was noted as alert at exams does not undermine the abnormal findings or plaintiff's reports of pain.

The ALJ erred by failing to explain why normal strength and sensation -- in all but the left calf – would outweigh significant abnormal findings such as limited range of motion, moderate atrophy of the left calf, ongoing arch collapse, pain with range of motion, reduced strength, and degenerative changes on x-rays. *See, e.g.,* AR 301, 381-82, 422-25 1010-11, 1034. *Reddick,* 157 F.3d at 725 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.").

13

Finally, the ALJ appears to suggest that plaintiff's allegations of disabling symptoms were inconsistent with her improvement with treatment. AR 24. As discussed above regarding Dr. Lundborg's opinion, the evidence cited by the ALJ indicates that plaintiff continued to experience pain and difficulty walking and standing despite undergoing surgery and physical therapy. *See generally* AR 996-1038. Some improvement in a claimant's symptoms does not mean that the claimant's impairments no longer seriously affect their ability to function in a workplace. *Holohan,* 246 F.3d at 1205.

In sum, the ALJ has failed to provide clear and convincing reasons to reject plaintiff's testimony and must reevaluate this testimony on remand.

### 3. Lay witness evidence

Plaintiff alleges the ALJ erred by failing to provide germane reasons for rejecting the lay witness statement from plaintiff's mother. Dkt. 12 at 17. An ALJ is "not required to articulate" how they evaluated evidence from non-medical sources such as family members. 20 C.F.R. §§ 404.1502(e), 416.902(e). The Ninth Circuit has not yet clarified whether an ALJ is still required to provide "germane reasons" for discounting lay witness testimony under the 2017 regulations. *See Stephens v. Kijakazi,* 2023 WL 6937296, at *2 (9th Cir. Oct. 20, 2023). Other relevant regulations indicate that ALJs will consider evidence from nonmedical sources when evaluating a claim of disability. *See, e.g.*, 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), 416.929(c)(1), 416.945(a)(3). And an ALJ may not reject "significant probative evidence" without explanation. *Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984).

The ALJ found the statement from plaintiff's mother generally consistent with the record, "with the exception of the previously discussed evidence which shows the claimant has a greater capacity for activity than asserted" by plaintiff's mother. AR 28. The ALJ has essentially rejected the lay witness testimony for the same reasons he rejected plaintiff's testimony, which the Court has found inadequate. As the Court found the ALJ erred in rejecting plaintiff's statement about activities, the ALJ's reliance on the plaintiff's activities in discounting plaintiff's mother's statement is also not a germane reason.

### 4. Whether the Court should reverse and remand for award of benefits.

Plaintiff argues this Court should remand for an award of benefits. Dkt. 12 at 18. When deciding whether to remand for an award of benefits, the Court must first determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted).

Only if the first two steps are satisfied can the Court determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison,* 759 F.3d at 1020. Further, "[e]ven if [the Court] reach[es] the third step and credit[s the improperly rejected evidence] as true, it

is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon,* 880 F.3d at 1045 (citing *Treichler,* 773 F.3d at 1101-02).

Here, remand for further proceedings is the appropriate remedy. Even if Dr. Lundborg's opinion were credited as true, it is unclear whether jobs would remain in the national economy that plaintiff could perform. Therefore, this matter should be reversed for further administrative proceedings, including a de novo hearing, not with a direction to award benefits.

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. On remand, the ALJ shall hold a de novo hearing, reevaluate the opinion of Dr. Lundborg, reevaluate plaintiff's testimony and the lay witness testimony, allow plaintiff the opportunity to introduce new evidence, and proceed with the five-step inquiry as appropriate.

Dated this 3rd day of June, 2026.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge